# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ERIC HALL,

      Plaintiff,

v.                                              CASE No. 8:20-cv-197-TGW

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

      The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

## I.

      The plaintiff, who was fifty years old at the time of the administrative decision and who has a college associate's degree (Tr. 45, 46),

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 16).

has worked as a drywall applicator, floor waxer/carpet cleaner (composite job) and painter/construction worker I (Tr. 33). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to bipolar disorder type 1, depression, mood swings, chronic lower back pain, rapid cycling, anger issues, delusional disorder, umbilical hernia and obesity (Tr. 71). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of degenerative disc disease, hernia, obesity, neurocognitive disorder, depression, bipolar disorder, personality disorder and obsessive-compulsive disorder (Tr. 25). The law judge concluded that these impairments limited the plaintiff to a range of light work. Specifically, the law judge determined that the plaintiff had the residual functional capacity to

> perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can perform simple routine repetitive tasks; can handle ordinary and routine changes in work settings or duties; but cannot perform fast-paced production or quota driven work, such as

-2-

assembly lines.  In addition, the claimant can
have frequent interaction with the public,
coworkers, and supervisors; and can maintain
attention and concentration for two hours, but then
requires a 10-minute break.

(Tr. 28).  The law judge decided that, with these limitations, the plaintiff

was unable to perform any past relevant work (Tr. 32).   However, based on

the testimony of a vocational expert, he found that there are jobs that exist in

significant numbers in the national economy that the claimant can perform,

such as fast food worker, cleaner/housekeeper and photocopy machine

operator (Tr. 33–34).   The Appeals Council let the law judge's decision

stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months."   42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A).   A "physical or mental impairment," under

the terms of the Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."    42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.    42 U.S.C. 405(g).    Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).    Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."    Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.    Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).    Similarly, it is the responsibility of the Commissioner to draw inferences from the

-4-

evidence, and those inferences are not to be overturned if they are supported by substantial evidence.    Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.    However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on three grounds: (1) "The ALJ failed to properly co[n]sider Mr. Hall's disability from the onset date of February 15, 2016 to June 12, 2017; (2) "The ALJ erred by giving 'little weight' to the neuropsychological evaluation done by Dr. Jeffrey Merin, Ph.D." and (3) "The ALJ's mental residual functional capacity finding was not supported by substantial evidence" (Doc. 26, pp. 16, 19, 22) (emphasis omitted).    None of these contentions demonstrates reversible error.

A.   The plaintiff argues first that the law judge should have found him disabled for the closed period of February 15, 2016, the alleged onset of disability, to June 12, 2017, when psychiatric medication improved his symptoms (id., p. 17).   He asserts that "[t]he only reason given by the ALJ for not considering ... [him disabled during that period] ... is that [the plaintiff] was not compliant with taking his medications," which constitutes reversible error since he was not always able to afford his medications (id., pp. 17, 18).   See Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) (When a claimant cannot afford the prescribed treatment, and does not have another way of obtaining it, he is excused from non-compliance.).

The Commissioner disputes the plaintiff's contention, arguing that the law judge "did not rely on any noncompliance with treatment as a 'sole ground for the denial of disability benefits'" (Doc. 28, p. 14).   In this respect, the Commissioner recounts the law judge's discussions of mental status examinations within normal limits, opinions of doctors that the plaintiff's mental impairments are not disabling, and the plaintiff's varied activities of daily living, including personal care, preparing meals, household chores, house renovations, shopping and errands with his wife, fishing, and watching sports events (see Tr. 26, 27, 29, 30).

-6-

A more fundamental problem with the plaintiff's argument is that the plaintiff failed to present any medical evidence of disability for several months of the alleged closed period. Additionally, the record shows that the plaintiff was taking his medications for part of this alleged closed disability period, so that the contention that the law judge erroneously rejected a claim of disability due to non-compliance during those months is baseless as well.

A "closed period" of disability occurs when "the decision maker determines ... the applicant ... was disabled for a finite period of time which started and stopped prior to the date of his decision." Mitchell v. Commissioner of Social Security, 393 Fed. Appx. 651, 652 (11th Cir. 2010), quoting Pickett v. Bowen, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). Thus:

> A closed period of disability may be considered when a claimant had an impairment that: 1) prevented substantial gainful activity for at least twelve (12) [consecutive] months, 2) continued to or through the month of filing, and 3) ceased in or after the month of filing but prior to the date of adjudication. POMS § DI 25510.01(A).

Harvey v. Astrue, No. 308-cv-455-J-25MCR, 2009 WL 2634399 at *8 (M.D. Fla.). See 42 U.S.C. 423(d)(1)(A); 20 C.F.R. 404.1509.

Here, the plaintiff has not shown that the law judge rejected a claim of disability throughout this time period due to medication non-compliance.   Furthermore, the plaintiff has not even presented any medical evidence of disability from May 13, 2016 to October 5, 2016.   Therefore, the plaintiff's claim for this closed period of disability fails.   Harvey v. Astrue, supra, 2009 WL 2634399 at *8 (A "claimant who is unable to point to a period of twelve (12) consecutive months in which []he was unable to engage in substantial gainful activity is not entitled to a closed period of social security benefits.); see, e.g., Kennedy v. Commissioner of Social Security, 87 Fed. Appx. 464, 466–67 (6th Cir. 2003).

Thus, the law judge cogently explained that, from February 15, 2016, to May 12, 2016, the plaintiff was not disabled because the evidence showed that the plaintiff's mental impairments were not debilitating, and that determination is supported by substantial evidence. Specifically, the law judge stated (Tr. 29):

> In February 2016, the claimant rated his depression as a three out of ten with no suicidal or homicidal ideation.   He also stated he was sleeping about eight to nine hours and felt rested in the morning, was working at McDonald's, and fixing up his house to sell it.   His treatment records note a normal mental status exam, he reported he was compliant with his medication,

and his provider noted that he was doing well with a stable mood and reasonably controlled addictive behaviors. However, he informed his provider that he was fired from McDonald's in March 2016 for missing work because his schedule[] was changed without his knowledge. The claimant continued to report improvement in his depression with medication and rated his depression as two out of ten in May 2016. His mental status exam was generally within normal limits. ... [H]e was described []as having a "quite bright" affect and denied any use of alcohol or gambling behaviors. The treatment records note that he was remod[e]ling his home ... (Ex. 2F/153-167).

The plaintiff does not mention this explanation in his argument and, therefore, he certainly does not undermine it. Consequently, the plaintiff has not shown that the evidence compelled the law judge to find him disabled during that time period. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). Concomitantly, this explanation unequivocally shows that the law judge did not reject a disability claim for this time period based on non-compliance with medication. In fact, the law judge noted the plaintiff's medication compliance at that time (see Tr. 29).

-9-

After the May 2016 treatment note, the record contains no medical evidence of the plaintiff's mental status until October 6, 2016—five months later.   The plaintiff bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.[2]   See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Since there is no medical evidence of the plaintiff's mental status during the period from May 13, 2016, to October 5, 2016, there is no cognizable basis for arguing that the law judge erred by finding the plaintiff not disabled during this time period.   See Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

The law judge next summarizes treatment notes from Fall 2016 to Spring 2017, from Advantage Mental Health Center and Solace Behavioral Health; and the evaluations of two consultative examiners (see Tr. 29, 30).   The law judge recounts a mix of normal and abnormal mental status examination results, and the plaintiff's reports of depressive and manic

---

[2]The plaintiff also fails to establish when he lost his health insurance.   The plaintiff reported in January 2017 that "he is back on insurance" (Tr. 645).   Importantly, however, it is unknown when the plaintiff initially lost his health insurance.   In this respect, the plaintiff argues, vaguely, that "the records fully document one of [his] concerns throughout the adjudicated period was that he lost his insurance and could not afford treatment or medications" (Doc. 26, p. 18, citing Tr. 622 and 697).   However, the evidence cited by the plaintiff does not support that assertion.   Thus, transcript page 622 says nothing about insurance or paying for medication, and transcript page 697 is the treatment record from January 2017 in which the plaintiff states he got his insurance back.

symptoms (see Tr. 26-27, 30–32).

The law judge added that, when the plaintiff is compliant with his medication, his mental status is stable (Tr. 30, 31).   In this respect, the law judge mentions the plaintiff's questionable medication compliance, but also acknowledges that the plaintiff did not have medical insurance to afford medications at some time prior to January 17, 2017 (see Tr. 29, 30).

It is unclear from the law judge's discussion whether he found the plaintiff was not disabled from October 2016 to January 2017 due to medication non-compliance.   However, assuming that the law judge erred in this respect, this four-month period does not come close to meeting the 12-month durational requirement.   See Harvey v. Astrue, supra, 2009 WL 2634399 at *8; Kennedy v. Commissioner of Social Security, supra, 87 Fed. Appx. at 467.   Consequently, the purported error would be harmless because the plaintiff would not be entitled to an award of supplemental security income and disability insurance benefits for a four-month period. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Mabrey v. Acting Commissioner of Social Security, 724 Fed. Appx. 726 (11th Cir. 2018) (A factual error or the application of an improper legal standard results in harmless error, and the law judge's decision will stand, when the correct

-11-

application would not contradict the law judge's ultimate findings.).

It is noted that the plaintiff alleges a closed disability period that extends to June 12, 2017, when the medications stabilized his mental condition (Doc. 26, p. 16–17; Tr. 685). This argument is distinct from his contention that the law judge rejected his claim due to medication non-compliance because the record reflects, and the plaintiff does not controvert, that he restarted his medications in January 2017.

Furthermore, the Commissioner responds, among other things, that several aspects of the plaintiff's mental status examination results were normal before June 12, 2017 (Doc. 28, p. 14; see, e.g., Tr. 640, 642, 645). The plaintiff has not made a convincing argument that the law judge was compelled to find him disabled between January 2017 and June 12, 2017, especially considering that the law judge did not find the plaintiff's subjective reports of debilitating symptoms fully credible (and that finding is unchallenged) (see Tr. 31). See Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

Moreover, even affording the plaintiff the great benefit of the doubt and extending a closed period of disability from October 7, 2016, to June 12, 2017, the plaintiff is still substantially short of meeting the 12-month durational requirement and, therefore, that purported error would be harmless as well.   See Diorio v. Heckler, supra, 721 F.2d at 728   In sum, the plaintiff's argument that the law judge erred by not finding a closed period of disability from February 15, 2016, to June 12, 2017, fails.

B.   The plaintiff's second contention is that the law judge "erred by giving 'little weight' to the neuropsychological evaluation done by Dr. Jeffrey Merin, Ph.D." (Doc. 26, p. 19) (emphasis omitted).   On December 28, 2016, Dr. Merin conducted a one-time psychological evaluation of the plaintiff (see Tr. 627–635). The plaintiff was referred to Dr. Merin for a learning disability evaluation from the Division of Vocational Rehabilitation (Tr. 627).

The law judge recalled Dr. Merin's Psychological Report in detail (Tr. 29–30).   He summarized:

> The claimant had a psychological evaluation in December 2016 conducted by psychologist Jeffrey Merin, Ph.D.   At the time of the evaluation, the claimant reported that he was employed at a golf course raking sand traps and moving equipment. His mental status evaluation revealed that his

mood was depressed, but without suicidal ideation or homicidal thoughts. His affect was full-range from appropriate to tearful, and his communications skills were tangential and circumstantial. However, he was oriented in all spheres, friendly, accommodating, non-defensive, cooperative, and compliant throughout the evaluation. (Ex. 4F, 8F).

The psychological evaluation report also notes that the claimant had a full-scale intelligence quotient of 78 on the Wechsler Adult Intelligence Scale, Fourth Edition, placing him in the low average range, but there was no clear evidence of a developmental disorder. In addition, the report notes evidence of a dependent personality disorder in which the claimant relies heavily upon others for help, guidance, and reassurance. The report also stated that the long-term, chronic, and global depression within the context of a bipolar disorder and neurocognitive deficiencies compromised the claimant's ability to grasp nonverbal interactions, nuance, and subtlety and his inability to accurately perceive, interpret, and internalize interpersonal relationships contribute to his feelings of insecurity, anxiety, and general nervousness. It was also noted that he has periods of grandiosity/mania consistent with his history of a bipolar disorder. Dr. Merin determined that functional limitations include variable attention to detail, poor organizational skills, and a lack of initiative and persistence and that the claimant has difficulty resolving simple problems, but is capable of performing singular tasks in untimed conditions. Dr. Merin diagnosed bipolar I disorder, moderate, depressed; persistent depressive disorder; unspecified neurocognitive disorder; and unspecified personality disorder with

-14-

dependent and obsessive/compulsive features.
(Ex. 4F, 8F).

The law judge gave Dr. Merin's opinions little weight (Tr. 32).   He

explained:

> Dr. Merin concluded that the claimant's prognosis
> for full-time employment appears poor and
> supported employment on a part-time basis is
> recommended. (Ex. 4F, 8F).   The undersigned
> gives little weight to this opinion because it is not
> consistent with the totality of the record evidence
> and is based on a one-time exam.   At the time Dr.
> Merin conducted his exam, the record only noted
> two appointments with a mental health provider
> between September and December 2016 when the
> claimant move[d] to Florida.   In addition, his
> treatment record a month prior to Dr. Merin's
> exam questioned medical compliance, and the
> claimant acknowledged that he was unable to
> obtain medication due to cost, which resulted in
> increased psychiatric symptoms. (Ex. 3F).
> However, the records after Dr. Merin's exam when
> the claimant began regular treatment at Solace
> demonstrates that he was stable with the
> medication regimen. (Ex. 9F).   Therefore, Dr.
> Merin's exam appears to reflect the claimant's
> mental state when he was not compliant with
> medication and not getting regular treatment.
> Therefore, Dr. Merin's one-time exam is not
> sufficient to support longitudinal functional
> limitations related to mental impairments.

The law judge's explanation for discounting Dr. Merin's opinion is

reasonable and supported by substantial evidence.

-15-

Notably, as a one-time examining consultant, Dr. Merin's opinion is not entitled to controlling weight or special significance. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); Denomme v. Commissioner of Social Security Administration, 518 Fed. Appx. 875, 877 (11th Cir. 2013) (law judge does not have to defer to opinion of doctor who conducted a single examination). Thus, a law judge need not show good cause for the weight assigned to such opinions. See id. Furthermore, Dr. Merin's recommendation of "supported employment on a part-time basis" is not even a medical opinion, but, instead, an opinion on an issue reserved to the Commissioner. See 20 C.F.R. 404.1527(d), 416.927(d).

The plaintiff summarily asserts that the law judge "fail[ed] … to cite to any medical evidence that is inconsistent with Dr. Merin's report" (Doc. 26, p. 20). The law judge identified ample evidence that was inconsistent with Dr. Merin's opinions of debilitating mental functional limitations (see Tr. 26–30). Therefore, this contention is meritless. For example, the law judge could reasonably find that the plaintiff's ability to earn a high school diploma and college associate's degree is inconsistent with Dr. Merin's opinion that the plaintiff is limited to "performing singular

tasks in untimed conditions" and that the plaintiff had difficulty solving even "simple problems" (Tr. 635).    Furthermore, several mental status examinations show the plaintiff's functioning within normal limits (see, e.g., Tr. 607, 659–60, 676–77).    Moreover, Dr. Merin's opinion that the plaintiff "presents with multiple infirmities that have significantly compromised daily activities" (Tr. 633) is inconsistent with the plaintiff's reports that he engages in many activities of daily living, such as personal care, household chores and repairs, preparing meals, shopping, sometimes managing finances, and recreational activities (Tr. 26–27, 29).

Additionally, the law judge could reasonably conclude that Dr. Merin's opinions do not provide a reliable longitudinal view of the claimant's mental functioning because the evaluation took place at a time when the plaintiff was not receiving regular mental health treatment and psychiatric medication, the lack of which exacerbated his psychiatric symptoms.    The plaintiff, attempting to undermine this explanation, essentially argues that his evaluation with Dr. Merin did not occur during extraordinary circumstances because, even with regular mental health treatment, the plaintiff experienced substantial mental dysfunction (see Doc. 26, pp. 21– 22).    This contention fails, as there is ample evidence showing that regular

mental health treatment and psychiatric medications improved the plaintiff's mental functioning (see, e.g., Tr. 595, 597, 607, 685).

Thus, as the Commissioner asserts, the plaintiff's argument is merely an attempt to re-weigh the evidence.   However, the plaintiff's citation to some evidence that could arguably support a finding of disability is insufficient because, as discussed above, there was ample record evidence supporting the law judge's finding, and the law judge's resolution of conflicting evidence is entitled to deference.   See Lawton v. Commissioner of Social Security, supra, 431 Fed. Appx. at 833 ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."). Thus, the plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances. The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of the district court.").

The plaintiff argues further that the law judge improperly gave more weight to the non-examining reviewing doctors than to Dr. Merin (Doc.

26, p. 21).   In this respect, the plaintiff contends that the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, and that the opinion of a non-examining reviewing physician standing alone does not constitute substantial evidence (id.).

Initially, it is noted that the difference in weight the law judge assigned to the opinions of Dr. Merin and the reviewing doctors is not substantial—thus, the law judge gave only "some" weight to the non-examining reviewing doctors and "little" weight to Dr. Merin's opinions. In all events, a law judge may give greater weight to a reviewing doctor when the law judge properly discounts the examining doctor and the reviewer's opinion is more consistent with the overall record. See Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012) ("The ALJ clearly articulated its reasons for giving significant weight to the ... non-examining physicians' opinions when it stated that their opinions were more consistent with the medical evidence."); Wilkinson v. Commissioner of Social Security, 289 Fed. Appx. 384, 386 (11th Cir. 2008).

Here, the law judge gave ample explanation for discounting Dr. Merin's opinions of debilitating mental functional limitations (see supra, pp.

15–17).   Furthermore, the law judge did not adopt wholesale the opinions of the reviewing doctors, who opined that the plaintiff's mental impairments were non-severe and caused no or mild mental functional limitations (Tr. 76–77, 103–04).   To the contrary, the law judge found, after considering the entire record, that the plaintiff's mental impairments were severe and warranted substantial mental functional limitations.

In sum, the law judge could reasonably find that Dr. Merin's opinions that the plaintiff's mental capabilities are extremely limited are not consistent with the record as a whole, and that the plaintiff's functioning at the time of the evaluation was not indicative of his mental status when he was receiving regular mental health treatment. Therefore, the law judge did not err in discounting Dr. Merin's opinions of disabling limitations or by purportedly giving more weight to the reviewers' opinions.

C.    The plaintiff's final contention is that the plaintiff's mental functional capacity determination was not supported by substantial evidence because it did not "comprehensively describe the plaintiff's mental limitations" (Doc. 26, p. 25).   This argument is unavailing.

The law judge found that the plaintiff had the mental residual functional capacity to

> perform simple routine repetitive tasks; can handle
> ordinary and routine changes in work settings or
> duties; but cannot perform fast-paced production
> or quota driven work, such as assembly lines. In
> addition, the claimant can have frequent
> interaction with the public, coworkers, and
> supervisors; and can maintain attention and
> concentration for two hours, but then requires a
> 10-minute break.

(Tr. 28). The plaintiff argues that, "[b]ecause the ALJ committed error in

failing to properly weigh Dr. Merin's opinion ... the RFC ... did not

comprise all of [the plaintiff's] symptoms as they relate to his cognitive

disorder and obsessive-compulsive disorders" (Doc. 26, p. 23). As

discussed supra, pp. 15–17, the law judge gave an adequate explanation for

rejecting Dr. Merin's opinions, and that determination is supported by

substantial evidence.[3]   Therefore, the plaintiff's argument that the residual

functional capacity is deficient because it does not include Dr. Merin's

opinions is meritless.

---

[3]The plaintiff argues, in particular, that the law judge failed to explain why he did
not accept Dr. Merin's opinion that the plaintiff needed to work in a "supported
employment" situation (Doc. 26, p. 25). That contention is baseless. Thus, the law
judge stated (Tr. 32):

> Dr. Merin concluded that the claimant's prognosis for full-time
> employment appears poor and supported employment on a part-time basis
> is recommended (Ex. 4F, 8F). The undersigned gives little weight to this
> opinion because it is not consistent with the totality of the record evidence
> and is based on a one-time exam.

The plaintiff also contends that limitations to "simple routine repetitive tasks" which are "not fast-paced or production rate" does not "fully account for the severity of [his] longstanding and chronic symptoms of mania, being [un]able to complete tasks, [lack of] focus [and] concentration, getting distracted and having markedly poor organizational skills" (Doc. 26, p. 24).

The law judge, in formulating the plaintiff's residual functional capacity, considered that the plaintiff "continued to experience some cognitive issues and some mental limitations related to his mental impairments" which "likely exacerbate[] his existing mental issues," and that he accounted for those limitations in the plaintiff's residual functional capacity (Tr. 31).   The plaintiff, in arguing for greater functional limitations, ignores the law judge's finding that the plaintiff's subjective complaints were not fully credible (id.).   The plaintiff has not challenged that finding.   As such, the law judge was not required to accept fully the plaintiff's reports as to the "intensity, persistence and limiting effects of th[o]se symptoms" (id.) and formulate a more restrictive mental residual functional capacity.

Additionally, the plaintiff, relying on <u>Winschel</u> v. <u>Commissioner of Social Security</u>, 631 F.3d 1176, 1180 (11th Cir. 2011), argues that the law judge's finding of moderate limitations in concentration, persistence or pace cannot be accounted for by his finding of "simple routine repetitive tasks" (Doc. 26, p. 24). However, <u>Winschel</u> does not state such a holding; rather, it merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence, or pace (<u>id</u>.). Accordingly, Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks. <u>See</u> <u>Washington</u> v. <u>Social Security Administration, Commissioner</u>, 503 Fed. Appx. 881, 883 (11th Cir. 2013); <u>Smith</u> v. <u>Commissioner of Social Security</u>, 486 Fed. Appx. 874, 876–77 (11th Cir. 2012) (medical evidence demonstrated that the performance of simple, routine and repetitive tasks adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace).

In this case, the law judge cites ample evidence showing that the plaintiff's moderate deficit in concentration, persistence or pace is

accommodated by a job which involves, for no more than two hours at a time, "simple routine repetitive tasks [with] ordinary and routine changes in work settings or duties" and no fast-paced production or quota-driven work (see Tr. 26–31).    In this respect, the law judge need not "match" the opinion of a medical source, as the responsibility for determining the plaintiff's residual functional capacity rests with the law judge. 20 C.F.R. 404.1546(c), 416.946(c); Castle v. Colvin, 557 Fed. Appx. 849, 854 (11th Cir. 2014) (rejecting the contention that the plaintiff's residual functional capacity "should have been underpinned by a medical source opinion").

The plaintiff's final contention is that the law judge erred in relying upon the vocational expert's testimony in finding the plaintiff was not disabled (Doc. 26, p. 23).    Since the law judge did not err in his determination of the plaintiff's residual functional capacity, this contention is baseless.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1270 (11th Cir. 2007). However, the law judge is not required to include restrictions in the

-24-

hypothetical question that he properly finds are unsupported.   <u>Crawford</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, 363 F.3d at 1161.

As discussed <u>supra</u>, the law judge's residual functional capacity is supported by substantial evidence.   Furthermore, the pertinent hypothetical question to the vocational expert included all of those limitations (<u>compare</u> Tr. 28 <u>with</u> Tr. 65–66).   Therefore, the law judge did not err in relying upon the vocational expert's testimony in finding the plaintiff was not disabled (Tr. 34).   <u>See</u> <u>Crawford</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, 363 F.3d at 1161.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this ___22nd___ day of March, 2021.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE